UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUBEN CARNERO<br><br>Plaintiff,<br><br>-v.-<br><br>BOSTON SCIENTIFIC CORPORATION<br><br>Defendant. | Civil Action No. 04-10031 (RWZ) |

**REPLY TO OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR TO STAY**

Pursuant to Local Rule 7.1, Boston Scientific Corporation ("BSC") submits this reply to Ruben Carnero's Opposition (the "Opposition") to BSC's Motion to Dismiss Or, In the Alternative, For Summary Judgment or to Stay (the "Motion").

**I.   CARNERO'S OPPOSITION FAILS TO MEET ITS BURDEN TO OVERCOME THE *ARAMCO* PRESUMPTION AGAINST EXTRATERRITORIALITY**

**A.   *Carnero's Opposition Misstates The* Aramco *Presumption Against Extraterritoriality***

In a futile attempt to avoid the dismissal or stay of his Section 806 complaint, Carnero's Opposition baldly asserts that the *Aramco* presumption against extraterritoriality applies only with respect to "legislation regulating labor conditions". Opposition, p. 10. This is a clear misstatement of the law. Contrary to Carnero's assertion (which is not supported by *any* case law), courts have applied the *Aramco* presumption against extraterritoriality to a wide array of legislation that extends beyond the regulation of labor conditions. *See, e.g., Smith v. United States*, 507 U.S. 197, 204 n.5 (1993) (applying *Aramco* presumption to Foreign Tort Claims Act); *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 173 (1993) (applying *Aramco*

presumption to § 243(h) of the Immigration and Nationality Act of 1952); *Nieman v. Dryclean U.S.A. Franchise Co.*, 178 F.3d 1126, 1129-31 (11th Cir. 1999) (applying *Aramco* presumption to Federal Trade Commission Act); *United States v. Javino*, 960 F.2d 1137, 1141 (2nd Cir. 1992) (applying *Aramco* presumption to a section of the National Firearms Act); *Doricent v. American Airlines, Inc.*, No. Civ. A. 91-12084Y, 1993 WL 437670 *8 (D. Mass. Oct. 19, 1993) (applying *Aramco* presumption to Massachusetts Civil Rights Statute). Accordingly, the *Aramco* presumption against extraterritoriality is clearly applicable in this case.[1]

Carnero's unsupported assertion that the *Aramco* presumption applies only when there is a conflict between the laws of the United States and a foreign sovereign is likewise incorrect. *See, e.g., Smith*, 507 U.S. at 204, n.5 (1993) (applying *Aramco* presumption to Foreign Tort Claims Act and specifically concluding that the presumption does not only apply "'to avoid unintended clashes between our laws and those of other nations which could result in international discord,' [b]ut . . . is also rooted in a number of considerations, not the least of which is the commonsense notion that Congress generally legislates with domestic concerns in mind.") (quoting *Aramco*); *Sale*, 509 U.S. at 173 (1993) (applying *Aramco* presumption to § 243(h) of the Immigration and Nationality Act of 1952 and, in response to the Court of Appeals' holding that the presumption had no relevance because there was no risk that Section 243(h) would conflict with the laws of any other nations, the Court noted that the "presumption has a foundation broader than the desire to avoid conflict with the laws of other nations.") Moreover, it is clear that Section 806 of SOX conflicts with Argentinean law. Under Argentine law, an employer who discharges an employee without cause is obligated to pay certain stipulated severance indemnities. Under Massachusetts and federal law, an employer who discharges an at-

---

[1] Even if the *Aramco* presumption applied only to legislation affecting labor conditions, the presumption would apply in this case because Section 806 affects labor conditions by explicitly regulating how employers can treat employees who report accounting irregularities.

- 2 -

LIBB/1245690.1

will employee without cause ordinarily faces no legal liability unless the reason for the termination is otherwise prohibited by a statute such as Section 806. For a prohibited termination, a Massachusetts employer faces a panoply of sanctions including back pay, reinstatement and attorneys fees. Thus, the entire dynamic of the employment relationship is different in Argentina and permitting Massachusetts and federal law to apply to employment in Argentina would clearly involve conflicting policy choices that create an obstacle to accomplishing the purposes of Argentina's "no-fault" approach to regulating employment.

In sum, Carnero's Opposition misrepresents the law concerning the *Aramco* presumption against extraterritorial application which plainly applies to a wide array of legislation that extend beyond those regulating labor conditions and to situations in which there is no direct conflict with the laws of another nation. As such, the *Aramco* presumption against extraterritoriality applies to Section 806, and Carnero has the heavy burden of overcoming that presumption.

**B.** *Carnero's Opposition Fails To Establish Any Clear and Unambiguous Statutory Statement or Legislative History That Supports Extraterritorial Application of Section 806*

Carnero's Opposition fails to meet the heavy burden of identifying (a) specific statutory language extending Section 806 to foreign citizens working abroad or (b) unambiguous and controlling legislative history to support his position.

First, Carnero's Opposition fails to identify any statutory language that extends Section 806 to foreign citizens working abroad. Instead, Carnero claims that vague references to "an employee" or "any person" are sufficient. However, Section 806 never defines these terms to include foreign nationals. In fact, neither Section 806 nor any other provision of SOX contains any definition of "employee" or "person" nor any statement that Section 806 is intended to apply extraterritorially. Moreover, the protection of "any employee" in Section 806 does not reflect the specific intention by Congress to cover foreign nationals working abroad that is needed to

- 3 -

overcome the presumption against extraterritorial coverage. *See, e.g., Aramco* at 255-256 and n.* (Title VII's definition of employee as "an individual employed by an employer" does not mean that foreign citizens constitute employees). This Court should not infer intent in a manner that is contrary to the presumption against extraterritoriality and the requirement of a clear expression of Congressional intent to overcome that presumption. Indeed, when Congress elected to extend SOX extraterritorially, it explicitly did so. *See* 18 U.S.C. § 1513(e) ("Section 1107") (Congress elected to amend an existing statute that has explicit extraterritorial application by making it a criminal offense to retaliate against individuals who provide "a law enforcement officer any truthful information relating to a commission or a possible commission of a Federal offense.")[2] That Congress took care to give extraterritorial application to the criminal sanction in Section 1107 but did not do so in Section 806 evidences an intention by Congress to apply the civil whistleblower protections only to U.S. citizens working within the United States. *See Field v. Mans,* 516 U.S. 59, 67 (1995) ("an express statutory requirement here, contrasted with statutory silence there, shows an intent to confine the requirement to a specified instance.").

Second, Carnero's Opposition fails to identify any noteworthy legislative history that demonstrates a Congressional intent to apply Section 806 extraterritorially. No such intent can be implied from Senator Leahy's comment that SOX "was intentionally written to sweep broadly . . . to protect investors and the market." Opposition, p. 12. That this is the only statement on which Carnero relies highlights the weakness of Carnero's position. Senator Leahy's statement makes no specific reference to extending Section 806 to foreign citizens working abroad. Indeed, his vague, general and isolated statement about the broad sweep of Section 806 cannot be tied to any specific statutory language extending SOX to foreign nationals and is therefore

---

[2] Section 1107 amended 18 U.S.C. § 1513, which addresses retaliation against a witness, victim or informant. In 18 U.S.C. § 1513(d), Congress states "[t]here is extraterritorial Federal jurisdiction over an offense under this section."

- 4 -

LIBB/1245690.1

entitled to no weight in this Court's analysis. *See, e.g., Public Empl. Retirement Sys. of Ohio v. Betts*, 492 U.S. 158, 168 (1989) (legislative history that cannot be tied to the enactment of specific statutory language ordinarily carries little weight in judicial interpretation of the statute); *Chandler v. Roudebush*, 425 U.S. 840, 858 n. 36 (1976) (report of a joint conference committee of both Houses of Congress or the report of a Senate or a House committee, is accorded more weight than the remarks even of the sponsor of a particular portion of a bill on the floor of the chamber).

## II. BSC IS ENTITLED TO SUMMARY JUDGMENT BECAUSE CARNERO MISSED THE FILING DEADLINE

### A. *Carnero's Opposition Fails to Identify Any Alleged Discriminatory Act That Occurred Within 90 Days Of The Filing of the Administrative Complaint*

Carnero's assertion that BSC's filing of the Argentinean Action was a "discriminatory act of intimidation and harassment prohibited under [Section 806]" (Opposition, p. 16), is wholly without merit. Section 806 prohibits discrimination against whistleblowers only "in the *terms and conditions of employment*". 18 U.S.C. § 1514A(a) (emphasis added). Filing a lawsuit against a former employee does not constitute discrimination with respect to the terms and conditions of employment. *Cf. Sahli v. Bull HN Information Systems, Inc.*, 437 Mass. 696 (2002) (an employer's filing of a lawsuit against a former employee for the purpose of determining its rights and obligations under an employment contract was not retaliation in violation of Mass. Gen. Laws c. 151B §4(4) or 4(4A)); *Hishon v. King & Spalding*, 467 U.S. 69, 74-75 (1984) (defining terms and conditions of employment as items that are "part and parcel of the employment relationship . . . incidents of employment . . . [or] an aspect of the relationship

between employer and employees."). Accordingly, the Opposition failed to identify any discriminatory act that occurred within 90 days of the filing of the administrative complaint.[3]

### B. *Carnero's Opposition Ignores The Teachings of* Delaware State College v. Ricks *and Its Progeny*

Carnero's Opposition does not dispute that he believed he was terminated by BSB, BSA and BSC on August 8, 2002. This belief that an adverse and retaliatory employment action had occurred triggered the statute of limitations, which required him to file his complaint with the Department of Labor ("DOL") within 90 days or by November 8, 2002. 18 U.S.C. § 1514A(b)(2)(D); *Ching v. Mitre Corp.*, 921 F.2d 11 (1st Cir. 1990) (holding that statute of limitations began to run on the date that the plaintiff formed a belief that he was being terminated and not on the later day when he received a formal notification of his termination). Carnero missed this deadline by eight months. Accordingly, his DOL complaint is time-barred.

Moreover, Carnero's Opposition ignores the fact that he declared himself constructively discharged on March 26, 2003. SUMF, ¶12(d). ("Due to your silence I consider myself terminated without just cause."). Carnero was therefore required to file his complaint with the DOL within 90 days of March 26, 2003, or by June 24, 2003. *See, e.g., Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2nd Cir. 2000) (in constructive discharge case, the employee's claim accrues on the date the employee provides definite notice of her intention to resign). Carnero's July 2, 2003 filing thus missed the filing deadline.

The Opposition attempts to muddy the waters by claiming that BSA's offer to reinstate him "raised uncertainty" regarding his employment status which was "not resolved until at least April 3, 2003." Opposition, p.17. However, even assuming that BSA's offer to reinstate him

---

[3] Carnero's reliance on his alleged "termination without cause" as a discriminatory act that fell within the 90-day period is also misplaced because he was not terminated without cause. BSA offered him a position of employment which he declined to accept and then voluntarily resigned.

created some uncertainty, that uncertainty was resolved on April 2, 2003—*not* April 3, 2003. BSA unequivocally informed Carnero that he had to respond by April 2, 2003 or he would be terminated. SUMF, ¶12(e). Therefore, when Carnero elected not to respond on April 2, 2003, he knew that he had been terminated. At that point, the termination decision had been made and communicated to him, and thus the limitations period had commenced. *See Delaware State College v. Ricks*, 449 U.S. 250 (1980). Thus, even if it is assumed that Carnero's employment did not end until April 2, 2003 (the day by which he was required to respond to BSA in order to accept the proposed reinstatement), Carnero would have been required to file his DOL complaint by July 1, 2003, which he likewise failed to do. BSA's subsequent April 3rd telegram confirming his resignation was merely ministerial and did not extend the limitations period for an additional day. *See, e.g., Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551-52 (7th Cir. 1996) (discovery of the original act of discrimination, not future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations begins to run); *Everett v. Cobb County School District*, 138 F.3d 1407, 1410 (11th Cir. 1998) (statute of limitations began when May 31, 1994 decision was made and communicated to plaintiff, not on June 6, 1994 when plaintiff received letter confirming May 31, 1994 decision).

### III. CARNERO'S COMPLAINT MUST BE DISMISSED UNDER THE DOCTRINE OF *RES JUDICATA*[4]

The principles of *res judicata* preclude a party from bringing a subsequent action where (1) a final judgment on the merits has entered; (2) there is an identity of parties or privies in the two suits; and (3) there is an identity of the causes of action in both suits or the causes of action raised in the later suit arise out of the same transaction or series of connected transactions and could have been raised in the earlier suit. *See Havercombe v. Department of Educ. of Com. of*

---

[4] BSC did not raise this argument in its original motion to dismiss because this Court had not yet ruled on its motion to dismiss Carnero's 2003 Action and thus the issue was not ripe.

*P.R.*, 250 F.3d 1, 3 (1st Cir. 2001); *United States v. Cunan*, 156 F.3d 110, 114 (1st Cir. 1998); *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 37 (1st Cir. 1998); *Larson v. United States*, 84 F.Supp.2d 218, 221 (D. Mass. 2000). Because these three elements are plainly present here, claim preclusion bars Carnero's causes of action under Section 806 (the "Section 806 Claims"). *See Allen v. McCurry*, 449 U.S. 90, 94; *Kale v. Combined Ins. Co. of America*, 924 F.2d 1161, 1164 (1st Cir. 1991); *Larson*, 84 F.Supp.2d at 221.

### A. *A Final Judgment On The Merits Has Entered*

On March 25, 2004, this Court dismissed Carnero's complaint in Civil Action 03-11479 (the "2003 Action"), stating that "[t]he motion to dismiss is allowed because the facts on which plaintiff relies, establish only that he worked for several South American subsidiaries of defendant in South America and in that work had no contract with the defendant in Massachusetts, nor did this defendant in any way direct, or control plaintiff. Judgment may be entered dismissing the complaint." Because the Court did not specify otherwise, this constitutes a judgment on the merits for *res judicata* purposes. F.R.C.P. 41(b) ("Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.").

### B. *The Parties Are Identical*

Given that the parties in this case and the parties in the 2003 Action are exactly the same, Carnero cannot dispute that this element is met.

### C. *The Claims Arise From The Same Common Nucleus Of Operative Fact*

Finally, all of the claims in this case arise from the same "common nucleus of operative fact" on which the claims in the 2003 Action were based. *Massachusetts School of Law*, 142 F.3d at 38. A "common nucleus of operative fact" exists when "the same parties pursue[] a

- 8 -

remedy that arose from the same 'transaction' in an earlier proceeding that ended with a final judgment." *Cunan*, 156 F.3d at 116. The particular legal theory or label used for each claim is irrelevant, since the purpose of claim preclusion is to "foreclose parties from multiple attempts to obtain relief for the same harm through the use of new legal theories." *Id.; see also Kale*, 924 F.2d at 1166 ("A single cause of action can manifest itself in an outpouring of different claims, based variously on federal statutes. . . . [A]s long as the new complaint grows out of the same transaction or series of connected transactions as the old complaint, the causes of action are considered to be identical for *res judicata* purposes.").

Applying the principles set forth above, Carnero's Section 806 Claims plainly arise from the same "common nucleus of operative fact" as the claims Carnero asserted in the 2003 Action. Indeed, Carnero himself recited identical facts to support both complaints. *Compare* Paragraphs 2-29 of Attachment A to the Section 806 Complaint *with* Paragraphs 4-34 of the 2003 Action. Therefore, Carnero cannot dispute that the Section 806 Claims arise out of the same nucleus of operative fact that his 2003 Action did for claim preclusion purposes. That the Section 806 Claims were not filed in the 2003 Action does not bar the application of the claim preclusion principles of *res judicata*. Indeed, claim preclusion bars the relitigation of issues that were or *could have been raised* in the earlier proceedings. *See Langston v. Insurance Co. of N. Am.*, 827 F.2d 1044, 1048 (5th Cir. 1987) ("[W]hen one has a choice of more than one remedy for a given wrong . . . he or she may not assert them serially, in successive actions, but must advance all at once on pain of bar.").

Moreover, Carnero cannot avoid claim preclusion by asserting that he could not have raised his Section 806 Claims in the 2003 Action because he had to complete the DOL's administrative proceedings. It is well-established that Carnero had a duty to amend his 2003 Action to add the Section 806 Claims, especially after the 180-day waiting period for

- 9 -

commencing a *de novo* private action expired on December 29, 2003. *See, Boateng v. Interamerican University, Inc.*, 210 F.3d 56 (1st Cir. 2000). In *Boateng*, a university professor, sued Interamerican in the Puerto Rican Court of First Instance under Puerto Rican law for breach of contract and discrimination on the basis of race and nationality ("Lawsuit No. 1"). Boateng also filed a claim under Title VII with the EEOC. Three months after commencing Lawsuit No. 1, Boateng received a right-to-sue letter from the EEOC and, instead of amending Lawsuit No. 1 to add his Title VII claim, filed another lawsuit in the District Court of Puerto Rico under Title VII. ("Lawsuit No. 2"). Thereafter, Interamerican prevailed in Lawsuit No. 1 and filed a motion to dismiss Lawsuit No. 2 based on the doctrine of *res judicata*. The District Court granted the motion, and the First Circuit affirmed, concluding that Lawsuit No. 2 arose out of the same nucleus of operative facts and that Boateng therefore had a duty to amend Lawsuit No. 1 to add his Title VII claim after he received his right-to-sue letter.

Similarly, Carnero filed the 2003 Action with this Court and filed his Section 806 charge with the DOL. While the 2003 Action was pending, the 180-day waiting period for commencing a *de novo* private action expired (December 29, 2003). 29 C.F.R. §1980.114(a). Pursuant to *Boateng*, Carnero therefore had a duty to amend the 2003 Action to add the Section 806 Claims. This is especially true since Carnero had ample time to move to amend the 2003 Action between the date the 180-day period expired (December 29, 2003), and the date this Court dismissed his 2003 Action (March 25, 2004). *See, e.g., Boateng*, 210 F.3d at 63 (noting that over two years passed between the issuance of the right-to-sue letter and the final judgment in Lawsuit No. 1); *Langston v. Insurance Co. of N. Am.*, 827 F.2d 1044 (5th Cir. 1987) (second suit barred by *res judicata* when plaintiff received EEOC right to sue letter three months before dismissal of first suit and could have moved to amend first claim even though a motion for judgment on the pleadings was pending); *Brown v. Commonwealth of Kentucky, Dept. of Human Resources*, No.

LIBB/1245690.1

Civ. A. 82-29, 1987 WL 32331 (E.D. Ky. Dec. 15, 1987) (doctrine of res judicata requires plaintiff to amend her first lawsuit to add Title VII harassment claim when she received right to sue letter from the EEOC nine months before the dismissal of the first lawsuit).[5]

In Carnero's Opposition to the Motion to Dismiss the 2003 Action, he directly raised the pendency of his SOX complaint with the DOL. Carnero's Opposition in the 2003 Action, p. 17-18. BSC anticipated that Carnero would seek leave to amend his complaint to add his SOX claim after the December 29, 2003 waiting period expired and before the argument on the motion to dismiss the 2003 Action, which was heard on January 7, 2004. Accordingly, BSC fully briefed the issue of extraterritorial application of SOX in its reply brief, which was filed on December 5, 2003, and argued that allowing an amendment to include a SOX claim would be futile because the claim would not withstand a motion to dismiss. Rather than directly addressing the SOX issue in a single hearing in the 2003 Action that would have been more efficient for the Court and for all parties, Carnero declined to seek leave to amend his complaint. Instead, Carnero tried to split his claim by bringing this separate action. Under these circumstances, Carnero should not be excused from the *res judicata* consequences of his ill-considered tactical choice to split claims that clearly arose from a common nucleus of operative facts.

---

[5] Some courts require plaintiffs to amend their complaints to add new claims even before the requisite administrative proceedings have been completed. *See, e.g., Havercombe v. Department of Education of the Commonwealth of Puerto Rico*, 250 F.3d 1 (1st Cir. 2001) (second suit barred by *res judicata* even though plaintiff had received a right-to-sue letter only three weeks before the jury verdict in the first lawsuit because the lack of a right-to-sue letter would not have prevented him from notifying the court of his new allegations based on the same set of facts and, if necessary, asking for a stay until the EEOC issued him the letter); *Woods v. Dunlop Tire Corporation*, 972 F.2d 36 (2nd Cir. 1992) (a plaintiff facing a statute of limitations deadline on an LMRA claim while the EEOC is still processing a charge on a Title VII claim could (a) file her LMRA claim and then seek a stay pending the outcome of her Title VII administrative proceedings or (b) file the LMRA action, seek a right to sue notice on her Title VII claim from the EEOC after 180 days, and then amend the complaint in her LMRA suit to include the Title VII claim; by failing to do either, plaintiff's subsequent Title VII claim is barred by *res judicata*).

In sum, the three elements necessary to justify the application of claim preclusion are present: There has been a final judgment on the merits, there is an identity of parties in the two suits, and the causes of action arise out of the same transaction or occurrence. As the foregoing case law demonstrates, Carnero had a duty to amend his 2003 Action to add his Section 806 Claims. Since he did not, the Section 806 Claims must be dismissed.

### IV.  CONCLUSION

For the foregoing reasons, BSC urges the Court to dismiss, grant summary judgment or stay this action.

Respectfully submitted,

BOSTON SCIENTIFIC CORPORATION

By its attorneys,

_____
James W. Nagle, P.C. (BBO # 366540)
Leslie S. Blickenstaff (BBO # 636267)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
Dated: April 12, 2004                (617) 570-1000

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/by hand on 4/12/04.

_____

# GOODWIN | PROCTER

James W. Nagle, P.C.
617.570.1233
jnagle@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.227.8591

April 12, 2004

**BY HAND**

Clerk of The Court
U.S. District Court
District of Massachusetts
1 Courthouse Way
Boston, MA 02210

Re:     **Carnero v. Boston Scientific Corporation**
        **Civil Action No. 04-10031-RWZ**

Dear Clerk:

Please file the enclosed Reply to Opposition to Motion to Dismiss or, in the Alternative, for Summary Judgment or to Stay in the above-referenced action. Please date stamp a copy of this letter and return to the messenger for return to our office.

Thank you for your attention to this matter.

Very truly yours,

*/s/ James W. Nagle/*

James W. Nagle, P.C.

JWN:je
Enclosure

cc:     Michael Lushan, Esq.
        Edward W. Griffith, Esq.

LIBB/1247454.1